## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| CORIL DYBEVIK, et al.,<br>on behalf of themselves and<br>similarly situated individuals,<br><br>               Plaintiffs,<br>   v.<br><br>QUALITY PORK PROCESSORS, INC.,<br>a/k/a QUALITY PORK PROCESSORS, INC.<br>OF TEXAS,<br><br>and<br><br>HORMEL FOODS CORPORATION<br><br>              Defendants. | Civil File No. 00-1611 ADM/SRN<br><br>REPRESENTATIVE ACTION |

### SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE (hereinafter referred to as the "Agreement") is made this 7th day of November, 2001, by and between Quality Pork Processors, Inc. (hereinafter referred to as "QPP"); Hormel Foods Corporation (hereinafter referred to as "Hormel"); and Coril Dybevik, Joe Flaherty, Norma Hauschildt, Darcy Kline, Linda Laack, Synthat Ponsyda, and Jose Ybarra (hereinafter referred to a "Plaintiff Employees"), on behalf of themselves and as representatives of other current and former employees of QPP, who consented to join in the above-captioned lawsuit against QPP and Hormel as opt-in Plaintiffs.

WHEREAS, Plaintiff Employees and current and former employees of QPP, have filed a lawsuit captioned Coril Dybevik, Joe Flaherty, Norma Hauschildt, Darcy Kline, Linda Laack, Synthat Ponsyda, and Jose Ybarra on behalf of themselves and similarly situated

FILED 12-20-01
RICHARD D. SLETTEN, CLERK
JUDGMENT ENT'D _____
DEPUTY CLERK

individuals v. Quality Pork Processors, Inc. a/k/a Quality Pork Processors, Inc of Texas and Hormel Foods Corporation, Civil File Number 00-CV-1611 ADM/SRN (herein referred to as the "Lawsuit"), in the United States District Court for the District of Minnesota, alleging violations of, inter alia, 29 U.S.C. §216(b) of the Fair Labor Standards Act ("FLSA") and the Minnesota Fair Labor Standards Act, Minn. Stat. §177.21, et seq.;

WHEREAS, other current or former employees of QPP filed consents to join the lawsuit;

WHEREAS, QPP has agreed to make available the sum of $1,075,000.00 applicable to cover compensation to all individual opt-in employee-Plaintiffs for their FLSA claims as well as their attorney's fees and all taxes required to be withheld by QPP or paid by any party relating to the payment of compensation to Plaintiffs as wages;

WHEREAS, Plaintiff Employees, QPP and Hormel have reached an agreement to resolve their differences and avoid the uncertainties, expense, loss of time and inconvenience resulting from further litigation;

NOW, THEREFORE, in consideration of the premises and mutual covenants contained herein, QPP, Hormel and Plaintiff Employees agree as follows:

1.    Court Approval Required.  Counsel for QPP, Hormel and Plaintiff Employees will jointly request the Court to approve this Agreement, and it shall not be effective until it has been approved and the Complaint Filed herein and the claims asserted in the Complaint on behalf of those Plaintiffs who filed consents to join the Lawsuit are dismissed with prejudice subject only to all parties' compliance with the terms of this Agreement and the Court's Order related thereto.

2.    Relevant Time Period. For the purposed of this Agreement, the Relevant

Time Period shall extend from July 7, 1997 (three years prior to the filing of the above-

captioned lawsuit) through August 31, 2001.

3.    Payments.

A.    Upon Court approval of this Agreement, which Order will have the

effect of banishing claims asserted in the Complaint from the beginning of time through

August 31, 2001, pursuant to the appropriate statutes, the parties shall have twenty (20)

days to reconcile their lists of Plaintiffs who are covered by the Agreement. Within ten (10)

days after the Court approval of this Agreement, QPP shall deposit into the Provost ☆

Umphrey Law Firm's escrow account $378,750.00 to be distributed by and among

Plaintiffs' Counsel, such amount representing reimbursement for Plaintiffs' attorneys fees

and costs incurred in the litigation of this Lawsuit. Of this $378,750.00, $110,000.00 is

earmarked as reimbursement for already expended costs, as well as expected costs to the

Plaintiffs in the administration of the settlement. The remaining $268,750.00 is earmarked

as attorney's fees for Plaintiffs' counsel, which amount is exactly 25% of the $1,075,000.00

Settlement Proceeds.

B.    Initial Mailing. QPP will retain the services of either Rust Consulting, Inc.

("Rust") or Larson, Allen, Weishair & Co., LLP ("Lawco") (hereafter "The Administrator") to

assist the parties in administering the Settlement in all respects. QPP agrees to pay for

all costs associated with retaining The Administrator and any other costs related to

administering the Settlement. The Administrator shall assist the parties in determining the

amount to be paid to individual Plaintiff Employees and to administer certain terms of this

Agreement. After the parties have completed the reconciliation of their lists of Plaintiffs,

3

and no later than thirty (30) days after Court approval of this Agreement, The Administrator shall mail, by certified mail return receipt requested, a "Notice of Settlement and Calculation of Months Worked" (a form for which will be drafted by Plaintiffs' counsel and agreed to by counsel for QPP), to each individual Plaintiff on the reconciled master list. This Notice will briefly state that a settlement has been reached and indicate the company's records concerning the individual's hiring and termination dates. The Notice will also state that if the individual disagrees with the hiring and termination dates, they must within twenty (20) days of the mailing, send documentary evidence of their actual hiring and/or termination dates in the following manner.

(1)     If a Plaintiff wishes to challenge the hiring and/or termination dates stated in the above Notice, the plaintiff must send to The Administrator documentary evidence of an actual hiring and/or termination date within twenty (20) days of mailing of the Notice. If a Plaintiff does not challenge the hiring and/or termination dates stated in the Notice, it will be presumed that QPP's dates are correct.

(2)     The Administrator will resolve, in a manner agreed to by the parties, all challenges made by Plaintiffs to the stated hiring and/or termination dates. The Administrator may, in its discretion, seek input from the parties to resolve these challenges.

(3)     <u>Undelivered Mailings</u>. The Administrator shall provide Plaintiffs' and QPP's Counsel with a list containing the names and last known addresses of all Plaintiffs whose Notice of Settlement Mailings are returned as undeliverable on a weekly basis. The Administrator shall attempt to locate or obtain a more current address for such individuals. Upon locating correct addresses, The Administrator shall promptly re-mail the

Notice of Settlement utilizing the corrected addresses.  The method for these Plaintiffs to challenge hiring and/or termination dates in the Notice of Settlement shall be identical to that stated in paragraphs B(1) and B(2) above.  In the event that any of the above second mailing of the Notice of Settlement mailings are again returned as undeliverable, QPP's stated hiring and termination dates shall be presumed to be correct and settlement shares shall be assigned for all Plaintiffs, as set forth in paragraph D below.

The Administrator shall provide Plaintiffs' and QPP's Counsel with a list containing the names and last known addresses of those plaintiffs whose Notice of Settlement mailings are returned as undeliverable a second time ("Unlocated Plaintiffs").  Plaintiffs' Counsel may, at their discretion and if practicable, make further efforts to find these Unlocated Plaintiffs.   QPP shall draft and temporarily retain settlement checks for Unlocated Plaintiffs regardless of the lack of correct addresses for them.   Plaintiffs' Counsel shall have until one-hundred and eighty (180) days from the mailing of the settlement checks to other Plaintiffs to find Unlocated Plaintiffs whose addresses were incorrect.  If Unlocated Plaintiffs are found after the second mailing, Plaintiffs' Counsel will provide QPP with their addresses and QPP shall send their settlement check within seven (7) days thereafter.

C.     Within seventy (70) days of the initial mailing of Notices by The Administrator, The Administrator shall resolve any and all challenges by individual Plaintiffs to QPP's stated hiring and/or termination dates, and shall confirm current addresses. Thereafter, The Administrator shall then have seven (7) days to calculate the total number of months each Plaintiff worked at QPP, taking into consideration the results of the above challenges.

5

D.    Computation of Individual Settlement Shares. The Administrator shall calculate the number of months each Plaintiff worked at QPP during the Relevant Time Period, with fifty (50) months being the maximum and one (1) being the minimum amount. A Plaintiff will be credited with one (1) month's service if they worked at least one (1) day in any calendar month. The Administrator shall add together all of the Plaintiffs' months calculations to arrive at a cumulative months amount for all plaintiffs. This cumulative months total shall be divided into the remaining settlement proceeds ($1,075,000 minus the amount designated to pay attorneys' fees, costs and the tax liability of QPP) to arrive at an average dollar amount per month. In calculating the final settlement amount for each Plaintiff, The Administrator shall multiply the average per month amount by the number of months each Plaintiff worked at QPP.  Upon completion of the settlement payment calculations, The Administrator shall provide QPP's and Plaintiffs' Counsel with a copy of the calculations for all Plaintiffs, and the parties will resolve inaccuracies in the calculations, if any, by mutual agreement.

E.    Within twenty (20) days of receipt of the settlement calculations, QPP shall provide a check to each Plaintiff, utilizing the most current addresses identified by The Administrator, in the amount of his/her pro rata share of the Settlement less applicable taxes required to be withheld under state and/or federal law.[1] These checks will be mailed by regular first class mail and accompanied by a letter from QPP briefly illustrating how the final settlement amount was calculated and explaining that the check must be cashed within sixty (60) days of mailing or it will be canceled.

---

[1]    Federal income tax withholding rate, FICA (Social Security Contribution) rate; and any applicable state tax rate.

F.      Any settlement checks which are not cashed within sixty (60) days following QPP's initial mailing of the same will be canceled and voided. QPP shall promptly provide to Plaintiffs' counsel a list containing all the names and last known addresses of the Plaintiffs whose settlement checks were so canceled. Plaintiffs' Counsel shall have one-hundred and twenty (120) days from receipt of this list to locate, at their discretion and if practicable, these Plaintiffs. QPP shall mail new settlement checks to these Plaintiffs, or any other Unlocated Plaintiff for whom a more current address has been provided by Plaintiffs' Counsel, to the address provided by Plaintiffs' Counsel, so long as it is within one-hundred and twenty (120) days of Plaintiffs' Counsels' receipt of the above list.

G.      <u>Reversion</u>. Any settlement checks that are not cashed within one-hundred and eighty (180) days after QPP provides Plaintiffs' Counsel with a list of Plaintiffs whose original settlement checks were uncashed and voided, as provided in paragraph F above, shall revert to QPP, with the only exception being that the first $10,000.00 from the reversion funds shall be set aside to resolve any disputes with regard to settlement administration, mis-delivery of settlement checks, claims from current or former QPP employees who assert (and who can provide supporting evidence for their assertion) that they signed opt-in forms but are not included in the settlement, and other similar administrative problems. One year after mailing of settlement proceeds as required by Paragraph 3(E) above-stated, the $10,000.00 retention fund here subject shall revert to QPP unless Plaintiffs' counsel or some other person with standing makes an objection that these funds should be used for the administrative error purposes earlier identified in this Paragraph. If an objection is made, the parties will make a good-faith effort to resolve any

dispute, but if they are unable to do so they will agree to appoint a neutral third-party mutually acceptable to both QPP and Plaintiffs' counsel with authority to fully and finally resolve any disputes.   In no event will QPP be responsible for making any additional payments under this Agreement at any time more than one year after the mailing of settlement checks as required in Paragraph 3(E) above.

H.    <u>Failure to Pay Settlement Proceeds To Legitimate Plaintiff Entitled To Participate in the Settlement</u>.  QPP shall be responsible for any mis-delivery of checks to a wrong plaintiff, or other failures to pay settlement proceeds to a legitimate plaintiff entitled to participate in the settlement, unless QPP can show that the failure to pay settlement proceeds was the fault of The Administrator or Plaintiffs' counsel.   QPP will not be responsible for circumstances where settlement checks are delivered to the correct plaintiff at the correct address but because of theft, forgery or any other circumstance beyond the control of QPP, the settlement check is cashed by a third-party not entitled to receive the settlement funds.  QPP will be responsible for making whole any deserving plaintiff under this Paragraph even if the $10,000 described in Paragraph G above (Reversion) is exhausted.

4.    <u>Endorsement</u>.  In return for these payments, Plaintiffs agree that an Order of Judgment shall be entered dismissing all claims described in the Lawsuit, with prejudice. In addition, each settlement check received by Plaintiffs shall bear the following statement:

> By endorsing this instrument, Plaintiff hereby consents to the settlement agreement and forever discharges Quality Pork and Hormel Foods from all claims brought or which could have been brought by <u>Coril Dybevik, Joe Flaherty, Norma Hauschildt, Darcy Kline, Linda Laack, Synthat Ponsyda, and Jose Ybarra on behalf of themselves and similarly situated individuals v. Quality Pork Processors, Inc. a/k/a Quality Pork and Hormel Foods</u>, Civil File

8

Number 00-CV-1611 ADM/SRN, from July 7, 1997 through August 31, 2001.

5.    <u>Non-admission</u>.  This Agreement is entered into for the purpose of resolving disputed claims and to avoid the uncertainties, expense and delay of litigation.   This settlement, the execution of this Agreement, and the payment of any amount shall not be interpreted as an admission of any wrongdoing, violation of any law or regulation or liability by QPP or Hormel or any of the parties released, as described below, and QPP and Hormel expressly deny liability for all claims made by Plaintiffs.  Accordingly, the fact of settlement may not be used in any proceeding other than to enforce this Agreement.  By entering into this Agreement, Hormel does not admit, and expressly disclaims, that Hormel is the Section 3(d) FLSA employer of any person working in the kill-and-cut operation of QPP; a participant in any Section 3(o) FLSA "Enterprise" with QPP, with respect to any persons working in the kill-and-cut operation of QPP or a "joint employer," in any sense, with QPP of any person working in the kill-and-cut operation of QPP.

6.    <u>Release Provision</u>.  In consideration of the terms of this Agreement, Plaintiff Employees hereby unconditionally release, acquit, and forever discharge QPP and Hormel, and their affiliated and related entities, and their past and present respective officers, directors, management, supervisors, agents, employees, attorneys, and all related persons or entities (collectively referred to as "Parties Released") from any and all claims related to, in any manner, the claims described in the Lawsuit arising any time prior to August 31, 2001.

7.    <u>Limited Confidentiality</u>. <u>NO UNAUTHORIZED PUBLIC COMMENT</u>.  Neither the Parties nor their counsel, without the prior written approval of counsel for the other

Parties (which approval may be withheld in a Party's sole discretion), shall issue any press release concerning this Agreement or any of its terms, or sponsor or participate in any press conference or media appearance concerning this Agreement or any of its terms. Plaintiffs' Counsel also agree that if they are contacted for an interview by the media they will comment only that the case has been settled amicably, but they will not disclose the dollar amount of the settlement.  Plaintiffs' counsel, to the extent practicable, will also discourage the Named Plaintiffs, the opt-in Plaintiffs, and their labor union and its officials and agents from participating in any interview.

AUTHORIZED COMMENT.  Notwithstanding the above confidentiality provisions: (a) the Parties or counsel for the Parties may state, in response to inquiry, that all matters subject to litigation between the Parties have been settled; and (b) Plaintiffs' counsel may disclose, in the ordinary course of communications describing their professional engagements, the title of the Action, and the fact that it was resolved in a court-approved settlement.

8.     Interpretation.  This settlement has been jointly negotiated and drafted by QPP, Hormel and Plaintiff Employees, each of whom has been represented by counsel. The language of this Agreement shall be constructed as a whole according to its fair meaning and in accordance with its purpose and without regard to who may have drafted any particular provision. The section titles throughout this Agreement are for convenience only and shall not be referred to in the interpretation of this Agreement.

9.     Integrated Agreement.  This Agreement contains the entire understanding between the parties with respect to the matters referred to in this Agreement.  No other

representations, covenants, undertakings or prior or contemporaneous Agreements, oral or written, regarding such matters which are not specifically contained and incorporated in this Agreement shall be deemed in any way to exist or bind any of the Parties. Each of the parties acknowledges that he or she has not been induced to enter into this Agreement and has not executed this Agreement in reliance upon any promises, representations, warranties or statements except as specifically set forth in this Agreement. The Parties acknowledge that this Agreement is intended to be and is an integrated Agreement.

10. <u>Representations and Warranties</u>. The Parties represent, warrant, agree and shall be estopped to deny each of the following:

a. That they have had a reasonable opportunity to review and consider this Agreement, and that they have read and understood the terms of the Agreement;

b. That named Plaintiff Employees have been provided an opportunity to consult with an attorney (or attorneys) of their choice prior to executing this Agreement and that they have indeed done so.

c. That in executing this Agreement, Plaintiff Employees are not relying upon any statement, representation or promise of QPP or Hormel other than expressly set forth in this Agreement;

d. That Plaintiff Employees are the sole owners of all Claims they have and which are being released in this Agreement, specifically including the Claims for overtime compensation, as described above, and that Plaintiff Employees have not assigned any of said claims to any other party; and

e. That the parties signing on behalf of QPP and Hormel are fully

11

authorized to sign on their behalf.

11.    <u>Severability</u>.  Should any part, term, condition or provision of this Agreement be declared or determined by any court to be illegal or unenforceable, the validity of remaining parts, terms, conditions, or provisions shall not be affected thereby and said illegal, invalid or unenforceable part, term, condition or provision shall be deemed not to be a part of this Agreement.  The obligations set forth in this Agreement are independent or one another, in that a breach of any one provision or a waiver of any one provision does not extinguish or waive any duties or rights set forth in any other provision of this Agreement, other than the conditions for the performance set forth herein.

12.    <u>Counterparts</u>.  This Agreement may be executed in any number of actual or telecopier counterparts and by the different parties on separate such counterparts, each of which when so executed and delivered shall be an original, whether actual or telecopier. The executed counterparts may be joined together and attached to one another which will then constitute one and the same instrument.

13.    <u>Miscellaneous</u>.

A.    Plaintiff Employees represent, warrant and agree that in executing this Agreement, they do so with full knowledge of any and all rights which Plaintiffs may have with respect to Parties Released or their representatives, and that Plaintiff Employees further represent that they do not rely and have not relied upon any representations or statements made by Parties Released or by any officer, agent, attorney or representative of Parties Released with regard to their rights or asserted rights.

B.    QPP, Hormel and Plaintiff Employees expressly assume the risk of

12

any mistake of fact in connection with the controversy comprised herein or with regard to facts relating thereto which are now unknown.

C.     This Agreement shall be governed by, and construed in accordance with, the law of the State of Minnesota, and shall be binding upon, inure to the benefit of, and be enforceable by QPP, Hormel and Plaintiff Employees and each of their respective heirs, estate or successors in interest, and any related corporate entities, their assigns, affiliates, representatives, officers, directors or shareholders.

D.     This Agreement may be amended or modified only by written instrument duly executed by each of the Parties hereto prior to the effective date of any such amendment or modification.

IN WITNESS WHEREOF, QPP, Hormel and Plaintiff Employees and their respective Counsel have executed this Settlement Agreement and Release as of the dates hereinafter appearing.

Dated this 20th day of _December_, 2001.

BY THE COURT:

By: _____
UNITED STATES DISTRICT JUDGE

AGREED:

By: _____
Richard H. Schnadig, Esquire
Lawrence J. Casazza, Esquire
James E. Bayles, Jr., Esquire
VEDDER, PRICE, KAUFMAN & KAMMHOLZ
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601

13

By: _____

John S. Beckmann, Esquire
MN Attorney Registration No. 72308
HOVERSTEN, JOHNSON, BECKMANN, WELLMAN & HOVEY
807 West Oakland Avenue
Austin, Minnesota 55912

ATTORNEYS FOR DEFENDANT QUALITY PORK PROCESSORS, INC.


By: _____

David F. Loeffler, Esquire
KRUKOWSKI & COSTELLO, S.C.
7111 W. Edgerton Ave.
Milwaukee, WI 53228-0999
ATTORNEYS FOR DEFENDANT HORMEL FOODS CORPORATION


By: _____   11- 07- 01

Reuben A. Guttman, Esquire
Brian P. McCafferty, Esquire
PROVOST & UMPHREY LAW FIRM, L.L.P.
1155 15th Street, N.W, Suite 410
Washington, D.C. 20005
(202) 466-0900


By: _____

Robert D. Metcalf, Esquire
MN Attorney Registration No. 72308
Connie L. Howard, Esquire
MN Attorney Registration No. 150228
METCALF, KASPARI, HOWARD, ENGDAHL & LAZARUS, P.A.
333 Parkdale Plaza
1660 South Highway 100
Minneapolis, Minnesota 55416-1531
(612) 591-9444
ATTORNEYS FOR PLAINTIFFS


14

By: _____

    John S. Beckmann, Esquire
    MN Attorney Registration No. 72308
HOVERSTEN, JOHNSON, BECKMANN, WELLMAN & HOVEY
807 West Oakland Avenue
Austin, Minnesota 55912

ATTORNEYS FOR DEFENDANT QUALITY PORK PROCESSORS, INC.

By: _____

    David F. Loeffler, Esquire
KRUKOWSKI & COSTELLO, S.C.
7111 W. Edgerton Ave.
Milwaukee, WI 53228-0999
ATTORNEYS FOR DEFENDANT HORMEL FOODS CORPORATION

By: _____  11-07-01

    Reuben A. Guttman, Esquire
    Brian P. McCafferty, Esquire
PROVOST & UMPHREY LAW FIRM, L.L.P.
1155 15th Street, N.W, Suite 410
Washington, D.C. 20005
(202) 466-0900


By: _____

    Robert D. Metcalf, Esquire
    MN Attorney Registration No. 72308
    Connie L. Howard, Esquire
    MN Attorney Registration No. 150228
METCALF, KASPARI, HOWARD, ENGDAHL & LAZARUS, P.A.
333 Parkdale Plaza
1660 South Highway 100
Minneapolis, Minnesota 55416-1531
(612) 591-9444
ATTORNEYS FOR PLAINTIFFS

By: _____
Coril Dybevik, Plaintiff

By: _____
Joe Flaherty, Plaintiff

By: _____
Norma Hauschildt, Plaintiff

By: _____
Darcy Kline, Plaintiff

By _____
Linda Laack, Plaintiff

By: _____
Synthat Ponsyda, Plaintiff


By: _____
Jose Ybarra, Plaintiff

By: _____
representative for Quality Pork Processors, Inc.

By: _____
representative for Hormel Food Corporation

By:_____
    Coril Dybevik, Plaintiff

By:_____
    Joe Flaherty, Plaintiff


By:_____
    Norma Hauschildt, Plaintiff

By:_____
    Darcy Kline, Plaintiff

By:_____
    Linda Laack, Plaintiff

By:_____
    Synthat Ponsyda, Plaintiff

By:_____
    Jose Ybarra, Plaintiff

By:_____
    representative for Quality Pork Processors, Inc.


By:_____
    representative for Hormel Food Corporation